# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS E. ABBOTT,<br><br>            Plaintiff,<br><br>v.<br><br>TERRIE ROSENTHAL, RANDY BLADES, IDAHO DEPARTMENT OF CORRECTION, IDAHO STATE CORRECTIONAL INSTITUTION, BEN METSER, MARTY THOMAS, CPL. DOSLIN, JENNETE HUNTER, SGT. BLAIR, MISS BASSFORD, and MARY ELLEN NOURSE,<br><br>            Defendants. | Case No. 1:13-cv-00222-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at Idaho State Correctional Institution (ISCI), is proceeding pro se and in forma pauperis in this civil rights action. Now pending before the Court are the following motions: (1) Plaintiff's Motion for Default (Dkt. 17); (2) Defendants' partial Motion to Dismiss[1] (Dkt. 15); and (3) Plaintiff's Motion to Deny Defendants' Motion to Dismiss (Dkt. 18), which the Court considers to be Plaintiff's response to Defendants' partial Motion to Dismiss.

---

[1] Also pending is Defendants' Motion for an Extension of Time, which the Court will grant. The partial Motion to Dismiss is considered timely.

**MEMORANDUM DECISION AND ORDER - 1**

All parties who have appeared have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Dkt. 12). *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having carefully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record. D. Idaho L. Civ. R. 7.1(d). For the reasons that follow, the Court will grant Defendants' Motion and (1) dismiss with prejudice all individual capacity claims as non-cognizable, and (2) dismiss without prejudice Claims Two through Five because Plaintiff failed to exhaust available administrative remedies as to those claims. Defendants shall file an answer to the remaining claim, Claim One, within 21 days of the date of this Order.

## FACTUAL ALLEGATIONS

Plaintiff is in a wheelchair and alleges that he has applied for multiple prison employment opportunities at ISCI, but that he has been denied a job because he is disabled. (Compl., Dkt. 3, at 5-8.) Plaintiff also was allegedly denied participation in the Correctional Industries training program. Plaintiff states that he has been told by prison staff members that they will not hire anyone in a wheelchair. (*Id*. at 9.) Plaintiff also claims that none of the areas in which he has sought prison employment has a handicap-accessible bathroom. (*Id*. at 10.)

Plaintiff filed the instant civil rights action in May 2013. Claim One asserts that

the IDOC, as well as Defendants Metser, Thomas, and Blades, violated the Americans with Disabilities Act and the Rehabilitation Act by not allowing Plaintiff to participate in the Correctional Industries program and by not having accessible bathrooms. (*Id*. at 8-9.) Claims Two through Five assert similar violations on several occasions at other employment sites at ISCI, violations allegedly committed by Defendants Doslin, Rosenthal, Blades, Hunter, Blair, Bassford, and Nourse. (*Id*. at 9-11.)

## DISCUSSION

**1.     Plaintiff's Motion for Default**

Plaintiff moves for entry of default, arguing that Defendants have not timely answered or filed a pre-answer motion with respect to Claim One. (Dkt. 17.) Although Defendants' Motion to Dismiss does apply to Claim One's individual capacity claims against Defendants Metser, Thomas, and Blades, Defendants have not moved to dismiss Claim One as against IDOC or ISCI, or as against Metser, Thomas, or Blades in their official capacities.

Federal Rule of Civil Procedure 12(a)(4) states that a Rule 12 motion tolls the time period within which a defendant must file a responsive pleading. The Court concludes that Rule 12(a)(4) also applies to a *partial* Rule 12(b) motion, tolling the time period for filing an answer to all claims contained in the Complaint—not just the claims for which the motion seeks dismissal. *See, e.g., ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 2011 WL 6296833, *5 (D. Ariz. Dec. 16, 2011) (unpublished) ("[T]he majority of courts

have expressly held that even though a pending motion to dismiss may only address some of the claims alleged, the motion to dismiss tolls the time to respond to all claims."). Otherwise, a defendant would have to file an answer as to any claims not subject to the motion to dismiss, only to file a second or amended answer later if the motion is denied. The important goal of judicial efficiency compels the Court to conclude that Defendants were not required to answer any part of the Complaint prior to the Court's decision on the partial Motion to Dismiss. Thus, Plaintiff's Motion for Default will be denied.

2.  **Defendants' Motion to Dismiss Individual Capacity Claims**

    A.  *Standard of Law Applicable to Rule 12(b)(6) Motions*

    Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A defendant may move to dismiss a complaint if that complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (alteration omitted).

The Supreme Court has identified two "working principles" that underlie this dismissal standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

When a court is considering a motion to dismiss under Rule 12(b)(6), it must "'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212

**MEMORANDUM DECISION AND ORDER - 5**

(9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)).

B. *Analysis*

Plaintiff brings his claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. The ADA and the Rehabilitation Act are congruent statutes in purpose and application. *See Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997). The evidence required for bringing a Rehabilitation Act claim is the same as that for an ADA claim, with the additional requirement that the disability discrimination be committed by an entity receiving federal financial assistance. *See* 29 U.S.C. § 794. Therefore, the standards of an ADA claim also apply to a Rehabilitation Act claim.

Title II of the ADA applies to an "individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

By statutory definition, a Title II ADA claim must be brought against the state or the state entity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (holding that Title

II of the ADA validly abrogates Eleventh Amendment immunity for states for conduct that actually violates the Fourteenth Amendment); *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act."). Claims against individuals asserted under the ADA are treated as official capacity claims because no individual capacity claims under the statute exist. *See, e.g., Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1187-88 (9th Cir. 2003) (per curiam) (holding that Title II's statutory language does not prohibit a plaintiff from requesting injunctive action against state officials in their official capacities).

For these reasons, all claims asserted against Defendants in their individual capacities will be dismissed with prejudice. This disposition does not affect Claim One as against the state or state entities or as against Defendants Metser, Thomas, and Blades in their official capacities.

3.  **Defendants' Motion To Dismiss Claims Two Through Five for Failure to Exhaust**

Defendants also seek dismissal of Claims Two through Five, arguing that Plaintiff did not exhaust available administrative remedies prior to filing suit.

   A.  ***Standard of Law for Exhaustion***

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, a prisoner is required to

**MEMORANDUM DECISION AND ORDER - 7**

exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to prisoners asserting claims under the ADA and the Rehabilitation Act. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061-62 (9th Cir. 2007). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that is "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In the context of such a motion, a court's consideration of evidence outside of the pleadings does *not* transform the motion to dismiss into a motion for summary judgment. Rather, in deciding a motion to dismiss for failure to exhaust, the Court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1120. If a prisoner has failed to exhaust his administrative remedies, the appropriate

remedy is dismissal without prejudice. *Id.*

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant does so, "the burden shifts to the plaintiff to show that the administrative remedies were unavailable." *Albino v. Baca*, 697 F.3d 1023, 1031 (9th Cir. 2012). Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937.

Administrative remedies will be deemed unavailable and exhaustion excused if an inmate shows that the required procedural steps were "not known and unknowable with reasonable effort." *Albino*, 697 F.3d at 1037. A complaint will not be dismissed for failure to exhaust if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if jail staff took any other "affirmative actions" that interfered with an inmate's efforts to exhaust. *Id.* at 1034, 1039. It is not enough that the prisoner was subjectively unaware of proper grievance procedures; that lack of awareness must also be "objectively reasonable." *Id.* at 1038.

B.  *IDOC's Grievance Procedure*

The IDOC's grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Whittington Aff., Dkt. 15-2, at ¶ 5.) If the issue cannot be resolved

**MEMORANDUM DECISION AND ORDER - 9**

informally through the use of a Concern Form, the inmate must then file a Grievance Form. (*Id.* at ¶ 6.)

A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance. When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally. Grievances must contain "specific information including the nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance. (*Id.* at ¶ 7.) When the Grievance Coordinator receives an inmate grievance, she enters the grievance information "into the Corrections Integrated System (CIS)," an electronic database used to track inmate grievances. (*Id.*) The Grievance Coordinator then assigns the grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue." (*Id.*) That staff member responds to the grievance and returns it to the Grievance Coordinator. The Grievance Coordinator then forwards the grievance to a "reviewing authority." (*Id.*)

The reviewing authority reviews the grievance, including the staff member's response, and must deny, grant, or modify the grievance. (*Id.*) The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate. (*Id.*) If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision. (*Id.* at ¶ 8.) The warden is the person who usually decides an inmate's grievance appeal.

(*Id*. at ¶ 9.) This "appellate authority" must review the appeal within 16 days. After the appeal is decided, the Grievance Coordinator returns the completed appeal form to the inmate.

Not until the completion of all three of these steps—Concern Form, Grievance Form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 10.)

### C. *Analysis*

On April 9, 2013, Plaintiff filed a grievance regarding his attempts to be accepted into the Correctional Industries ("CI") program. (Ex. D to Whittington Aff., Dkt. 15-4 at 30.) The prison official who initially responded to Plaintiff's grievance stated that "[e]ntry into the CI compound is a security process that all offenders enrolled in the CI program are required to do by ISOC security" and that the CI program "is a privilege and not a right." (*Id*. at 27.) Defendant Rosenthal reviewed this response and denied the grievance. She stated that CI was a training program, that Plaintiff's "disability [was] not a determining factor for being accepted into the program," and that if Plaintiff was accepted into the training program, prison officials would work with Plaintiff to accommodate his disability. (*Id*. at 28.) Plaintiff filed an appeal, which was denied by Defendant Blades.

Although Plaintiff fully exhausted this grievance with respect to his claims regarding the CI program (Claim One), Plaintiff did not file any other grievances with respect to prison employment or accessibility. (Whittington Aff. at ¶¶ 15-16.) Thus,

**MEMORANDUM DECISION AND ORDER - 11**

Defendants have met their burden of establishing that Plaintiff did not exhaust Claims Two through Five, which pertain to events other than Plaintiff's desire to join the CI program. The burden thus shifts to Plaintiff to show that administrative remedies were unavailable. Plaintiff has not done so. Plaintiff argues that he felt it unnecessary to file more than one grievance, but the Court agrees with Defendants that "[t]he response by Defendants Rosenthal and Blades to one grievance that was specific to CI does not serve to exhaust the grievance process as to the other Defendants," who allegedly denied Plaintiff employment opportunities at other employment sites at ISCI. (Reply, Dkt. 20, at 4.) Because Plaintiff did not file a grievance with respect to any of these other instances of alleged discrimination, he may not proceed on those claims in this action.

## CONCLUSION

For the foregoing reasons, the Court will dismiss (1) all of Plaintiff's individual capacity claims, and (2) Claims Two through Five.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Extension of Time (Dkt. 13) is GRANTED. Defendants' partial Motion to Dismiss is deemed timely.

2. Defendants' partial Motion to Dismiss (Dkt. 15) is GRANTED. All individual capacity claims against the individual Defendants are DISMISSED with prejudice. This Order does not affect Claim One as

against the state or state entities or as Defendants Metser, Thomas, and Blades in their official capacities.

3. Claims Two through Five of the Complaint are DISMISSED without prejudice for failure to exhaust available administrative remedies. Defendants Doslin, Rosenthal, Hunter, Blair, Bassford, and Nourse are DISMISSED from this action.

4. Plaintiff's Motion to Deny Defendants' Motion to Dismiss (Dkt. 18) is DENIED.

5. Plaintiff's Motion for Default (Dkt. 17) is DENIED.

6. Defendants IDOC and ISCI, as well as Defendants Metser, Thomas, and Blades (in their official capacities only), shall file their answer to Claim One no later than **21 days** after entry of this Order.

DATED: **March 5, 2014**

Honorable Candy W. Dale
United States Magistrate Judge