UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS E. ABBOTT,<br><br>                    Plaintiff,<br><br>v.<br><br>TERRIE ROSENTHAL, RANDY<br>BLADES, IDAHO DEPARTMENT OF<br>CORRECTION, IDAHO STATE<br>CORRECTIONAL INSTITUTION,<br>BEN METZGER, MARTY THOMAS,<br>CPL. DOSLIN, JENNETE HUNTER,<br>SGT. BLAIR, MISS BASSFORD, and<br>MARY ELLEN NOURSE,<br><br>                    Defendants. | Case No. 1:13-cv-00222-CWD<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

**INTRODUCTION**

Before the Court is a motion for summary judgment filed by Defendants Randy

Blades, the Idaho Department of Correction (IDOC), the Idaho State Correctional

Institution (ISCI), Ben Metzger, and Marty Thomas, seeking judgment as a matter of law

on all remaining claims asserted by pro se Plaintiff Dennis Abbott. (Dkt. 26.) The Court

previously dismissed Abbott's individual capacity claims against all Defendants, as well

**MEMORANDUM DECISION AND ORDER - 1**

as all claims asserted against Defendants Doslin, Rosenthal, Hunter, Blair, Bassford, and Nourse in the Complaint. (Dkt. 22.)

Abbott alleges Defendants, acting in their official capacities, violated his rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, by not allowing him to participate in the Correctional Industries (C.I.) training program because he is confined to a wheelchair, and by failing to provide a wheelchair-accessible restroom in the C.I. facilities. Abbott seeks monetary, injunctive, and declaratory relief for Defendants' violations.

All parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. 12.) In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, Defendants' motion will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d). For reasons explained below, the Court will grant summary judgment.

## BACKGROUND[1]

At all times mentioned in his Complaint, Plaintiff Dennis Abbott, who uses a wheelchair due to his disability, was an inmate at the Idaho State Correctional Institution (ISCI). Since filing this action, Abbott has been released from ISCI custody. *See* Aff. Magnelli, Ex. A. (Dkt. 26-7 at 4) ("I have been released on parole."). Abbott's claim

---

[1] The following facts are undisputed unless otherwise indicated. When the facts are disputed, they are taken in the light most favorable to Abbott, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the nonmoving party on motion for summary judgment).

**MEMORANDUM DECISION AND ORDER - 2**

arises from his desire to participate in Correctional Industries, a training and workforce preparedness program for offenders, while he was in ISCI's custody.

According to Defendants, C.I. is a self-funded state agency that relies upon revenues from the sale of its goods and products to sustain its operations *See* Aff. Anderson, ¶ 3. (Dkt. 26-6). C.I. does not receive federal funding to operate its programs, nor does it receive funding from IDOC or the State of Idaho to operate its programs. *Id.*[2]

Acceptance into the C.I. training program is a multi-step process.  *See* Aff. Walden, ¶ 2. (Dkt. 26-4 at 2.) First, the inmate must be recommended by his case manager to ensure his employment will not interfere with other rehabilitative programs the inmate may be involved in. Next, security staff must determine whether the offender is eligible to participate in offender work programs.[3] If the inmate passes the security check process, his application is routed to the C.I. training program manager, who then routes the application to the shop supervisor/trainer where a position is open.  At this point, interviews are conducted. When determining who is the best fit for a given position in the C.I. training program, in addition to work skills, the interviewer considers whether the new potential employee can maintain a worker friendly environment with the present employees. *See* Aff. Metzger, ¶ 8. (Dkt. 36-3 at 3.) With these criteria in mind, the most successful offender candidate is offered the position.

Access to the C.I. building is restricted to those inmates who have been selected to participate in the training program. C.I.'s main entrance, the "clean room," is accessible

---

[2] Defendants did not assert in their Answer that C.I. does not receive federal funding.
[3] The record does not indicate the eligibility requirements required for the security staff's approval. Nonetheless, it is undisputed that Abbott passed this step.

**MEMORANDUM DECISION AND ORDER - 3**

by stairs only and is equipped with a metal detector, which offender employees are
required to pass through to gain physical entry into the facilities.[4] *See* Aff. Anderson, ¶
6. (Dkt. 26-6 at 4.) The C.I. building can be accessed also through a separate entrance
equipped with a handicapped accessible ramp.[5] *See* Aff. Walden, ¶ 7. (Dkt. 26-4 at 4.)
At all times mentioned in the Complaint, the restrooms in the C.I. building were not
handicapped accessible. *Id.* at ¶ 8. The closest handicapped accessible restroom to the
C.I. building was located in a nearby dining hall. *Id.*

In January of 2013, Abbott applied for a clerk position open in C.I.'s upholstery
shop.[6] Ben Metzger, supervisor of the upholstery shop, interviewed Abbott and at least
five other inmates for the position. On his application, under the physical restrictions
section, Abbott listed "none (wheelchair)." Aff. Walden, Ex. A. (Dkt. 26-4 at 7.) For his
interview, Abbott accessed the C.I. building through the main entrance. Because Abbott
uses a wheelchair, he was carried down the stairs by correctional staff, where he was then
interviewed by Metzger.[7] During the interview, Metzger did not discuss Abbott's
disability with Abbott. *See* Aff. Metzger, ¶ 6. (Dkt. 26-3 at 3.) When the interview was
over, Abbott was approached by a lead man[8] who told Abbott "[w]e can't hire anyone in

---

[4] Because the C.I. training program exposes inmates to a variety of tools that could be used as a weapon, the inmate entrance is secured for safety and security purposes and is monitored to prevent tools from leaving the shops and becoming accessible to the general population at ISCI. *See* Aff. Anderson, ¶ 6. (Dkt. 26-6 at 4.)
[5] If necessary, an inmate wheelchair pusher could assist a non-ambulatory inmate up or down the ramp. *See* Aff. Walden, ¶ 7. (Dkt. 26-4.)
[6] Abbott's application for the position was approved by both his case manager and security.
[7] The record does not address what Abbott and Metzger discussed during the interview, nor is it clear what Abbott listed as his qualifications in his application; the qualifications section of the application in the record are not legible. *See* Aff. Walden, Ex. A. (Dkt. 26-4 at 7.)
[8] "The term 'lead man' is used within the C.I. training program to refer to an offender who has worked in the area long enough to be experienced in the operation and who may mentor a less experienced trainee." *See* Aff. Walden (Dkt. 26-4 at 4.)

MEMORANDUM DECISION AND ORDER - 4

a wheelchair."[9] Complaint (Dkt. 3 at 9). Metzger did not hear this exchange. *See* Aff. Metzger, ¶ 6. (Dkt. 26-3 at 3.)

Before selecting a candidate for the clerk position in the C.I. training program, Metzger asked the other offender workers and staff members for their thoughts about Abbott and the other applicants. Regarding Abbott, "one or two were critical of [Abbott] as a manipulator." *See* Aff. Metzger, ¶ 8. (Dkt. 26-3 at 3.) This feedback, coupled with Abbott's less than honest answer to one of the questions on Abbott's application, led Metzger to select an inmate he considered more qualified than Abbott.

On April 9, 2013, Abbott filed a grievance regarding the denial of his application to the C.I. training program. *See* Complaint, Ex. L. (Dkt. 3-13 at 2.) On his grievance form, Abbott stated: "Americans with Disabilities Act, Title II violation. Correctional Industries has no passage for offenders who are in wheelchairs to enter the jobsite and gain employment for such industries. . . ." *Id.* On the grievance form, under the section suggesting a "solution for the problem," Abbott stated: "Give me the job I asked for or equivalent." *Id.*  On April 17, 2013, Terri Rosenthal, the ISCI Administrative Support Manager, responded to and denied Abbott's grievance.[10] *See* Complaint, Ex. M. (Dkt. 3-14 at 4.) She explained: "Your disability is not a determining factor for being accepted into the training program…. If you are accepted into the training program, we will work

---

[9] Defendants do not dispute this fact.
[10] Abbott's initial grievance form went through two levels of review. First, Scott Walden, the production manager at ISCI, submitted an initial response to Abbott's grievance on April 16, 2013. In his response, he explained C.I. is a training program, not a job, and participation in the program is a privilege, not a right. Rosenthal's response, labeled "reviewing authority response" is the second level of review.

**MEMORANDUM DECISION AND ORDER - 5**

with you and C.I. to accommodate your disability. You are also welcome to apply for other available jobs throughout the facility." *Id.*

On April 19, 2013, Abbott appealed Rosenthal's denial of his grievance. In his appeal, Abbott stated, "I am asserting there is a viable discrimination within this facility in not allowing offenders in wheelchairs to have a pay job. . . . Correctional Industries only have stairs for offenders to reports for work. There is no ramp for wheelchairs." *Id.* In addition, Abbott's appeal states, "[m]ake this institution disability friendly." *Id.*

During the appeal process, Abbott filed an offender concern form addressed to Rosenthal on April 21, 2013. In the "concern" section, Abbott wrote: "I am barred from entering C.I. because of barriers, that being stairs and C.I. is not interested in making accommodations for offenders in wheelchairs and this is why I must take this to court." *See* Complaint, Ex. K (Dkt. 3-12 at 2.) On the same day, Rosenthal responded and explained to Abbott, "if you are accepted into the training program we can make a reasonable accommodation for you to enter CI; however not your wheelchair pusher."[11] *Id.*

On April 25, 2013, Defendant Randy Blades, the ISCI warden, denied Abbott's appeal.[12] Complaint Ex. M. (Dkt. 3-13 at 4.) Blades explained: "If Correctional Industries accepts you into the CI program we will make accommodations for your wheelchair issue into C.I. entry. We can overcome any security concerns." *Id.* Blades addressed Abbott's

---

[11] Defendants contend Abbott was selected for another position in the C.I. training program in December of 2013, on the glove-line, but Abbott declined the offer because Abbott claimed his legs would fall asleep if he had to sit for long periods of time. *See* Aff. Walden, ¶6. (Dkt. 26-4 at 3.) Abbott contends we was never offered the glove-line position. *See* Response (Dkt. 29 at 2).

[12] The grievance form indicates Blades is a "Level 3 Responder" and Rosenthal is a "Level 2 Responder."

**MEMORANDUM DECISION AND ORDER - 6**

concern further, stating: "We met with CI and they are developing essential functions for the various positions, that way they will be able to see what positions persons with disabilities can safely apply for. We will also look at disability clean room accessibility, ADA compliant ramps, and restrooms. This will take some time for research, development, and construction however." *Id.* On May 13, 2013, Abbott filed his Complaint.

## ANALYSIS

## 1. SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 directs the court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir.2010) (quoting *Anderson*, 477 U.S. at 248).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific

MEMORANDUM DECISION AND ORDER - 7

facts demonstrating the existence of genuine issues for trial." *Id*. "If a party fails to

properly support an assertion of fact or fails to properly address another party's assertion

of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the

purposes of the motion," Fed. R. Civ. P. 56(e) (2), and "the court may grant summary

judgment if the motion and supporting materials—including the facts considered

undisputed—show that the moving party is entitled to summary judgment." Dist. Idaho

L. Rule 7.1(e).

## 2. TITLE II OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT

The ADA and the Rehabilitation Act are congruent statutes in purpose and in

application. *See Clark v. California*, 123 F.3d 1267, 1270 (9th Cir. 1997). The evidence

required for bringing a Rehabilitation Act claim is the same as that for an ADA claim,

with the additional requirement that the disability discrimination be committed by an

entity receiving federal financial assistance. *See* 29 U.S.C. § 794. Therefore, the

standards of an ADA claim apply also to a claim under the Rehabilitation Act.

Title II of the ADA provides that no "qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination

by any such entity." 42 U.S.C. § 12132.

A claim under Title II of the ADA requires the plaintiff to establish: (1) he has a

disability; (2) he is otherwise qualified to participate in or receive a public entity's

services, programs or activities; (3) he was denied the benefits of the services, programs

or activities, or was otherwise discriminated against by the public entity; and (4) that such

**MEMORANDUM DECISION AND ORDER - 8**

exclusion, denial of benefits, or discrimination was by reason of his disability. *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997). Title II of the ADA extends to prison inmates who are deprived of the benefits of and participation in prison programs, services, or activities because of a disability. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

Further, "[t]o recover monetary damages under Title II of the ADA or Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001). The United States Court of Appeals for the Ninth Circuit applies the "deliberate indifference" standard to determine intentional discrimination. *See Id.* Deliberate indifference requires the plaintiff to demonstrate the defendant knew that harm to a plaintiff's federally protected right is substantially likely and that the defendant failed to act upon that likelihood. *Id*; *see City of Canton v. Harris,* 489 U.S. 378, 389 (1988).

A plaintiff satisfies the knowledge element of deliberate indifference by demonstrating he alerted the "public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation)." *Id.* at 1139. Upon receiving a request for accommodation, defendants are "required to undertake a fact specific investigation to determine what constitutes a reasonable accommodation." *Id.* "[A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Id.* "A failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

**MEMORANDUM DECISION AND ORDER - 9**

### A. Abbott's Official Capacity Claim Against Defendants

In his Complaint, Abbott contends Defendants violated both Title II of the ADA and Section 504 of the Rehabilitation Act, because he was denied the clerk position in the upholstery unit within ISCI's C.I. training program due to his disability. Defendants assert, because participation in the C.I. training program is not a fundamental right, and because the C.I. training program does not receive federal funding, Abbott's claims are barred by sovereign immunity. Alternatively, Defendants argue if sovereign immunity does not apply, Abbott has nonetheless failed to satisfy the elements of a Title II ADA or Rehabilitation Act claim.

Abbott does not address directly either argument in his response, nor does he present an alternative argument for denying summary judgment. In addition, Abbott's assertions of disputed facts are not properly supported pursuant to Fed. R. Civ. P. 56(c). However, the Court will consider Abbott's undisputed facts for purposes of deciding the motion. Fed. R. Civ. P. 56(e) (2).

### 1. Sovereign Immunity

The Court need not decide whether sovereign immunity applies in this instance.[13] This is because, even assuming a valid abrogation of sovereign immunity in Title II ADA

---

[13] Defendants assume there has been no valid abrogation of sovereign immunity to Title II ADA claims involving non-fundamental rights. In *Tennessee v. Lane*, the Supreme Court held Title II of the ADA validly abrogates state sovereign immunity to cases implicating the fundamental right of access to courts. 541 U.S. 509, 517 (2004). The Court placed "significant emphasis upon the fact that courthouse access is a fundamental right that implicates not only disabled persons' entitlement to equal protection but also their due process rights and their rights under the First and Sixth Amendments." *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 793 (9th Cir. 2004) (J. O'Scannlain, concurring) (*citing Lane*, 541 U.S. at 523). However, the Court left "open to question whether Title II validly abrogates state sovereign immunity where no such fundamental right is at issue." *Id.* The Ninth Circuit has not addressed this issue.

**MEMORANDUM DECISION AND ORDER - 10**

claims, and assuming C.I. receives federal funding, no genuine issue of material fact exists to support Abbott's claim of intentional discrimination under the ADA and Rehabilitation Act.

### 2. Elements of Abbott's Claim

Defendants do not dispute the first two elements of Abbott's claim. Defendants concede Abbott is a "qualified individual with a disability" and that Abbott is otherwise qualified to participate in the C.I. training program. However, Defendants argue Abbott was not excluded from participation in the C.I. training program, but even if he was, he was not excluded due to his disability. In addition, Defendants contend if discrimination is found, Abbott's claim still fails because he is unable to prove Defendants acted with deliberate indifference to his federally protected right to accommodation.

The Court finds the record is less than clear as to whether Abbott was denied participation in the C.I. training program.[14] However, there is no dispute Abbott's application for the clerk position in the upholstery unit at C.I. was denied. Therefore, the Court must determine whether genuine issues of material fact exist upon which a reasonable jury could find Abbott was denied the clerk position in the C.I. training program because of his disability, and whether Defendants acted with deliberate indifference to Abbott's request for accommodations.

---

[14] Defendants argue Abbott was not denied participation in the C.I. training program. They contend Abbott was afforded the same opportunities to apply to positions within C.I. as other defendants, and declining to hire an inmate for one job does not ban the inmate from participation in C.I. or from applying to other positions. To the contrary, Abbott contends Defendants' failure to hire him for the clerk position constitutes a denial of the opportunity to participate in the C.I. program in full.

**MEMORANDUM DECISION AND ORDER - 11**

Defendants contend they do not have a policy or practice of denying inmates with disabilities acceptance into the C.I. training program and Abbott has put forth insufficient evidence to support the existence of such a policy. However, there is no dispute Abbott applied and interviewed for a clerk position in the upholstery unit in C.I., and Defendants explain several reasons why Abbott was not selected for the position—which Abbott does not dispute.

First, the Defendants present a legitimate, non-discriminatory reason why Abbott was not hired—because he was not the most qualified applicant. In Metzger's affidavit, he states: "After conducting the interviews I chose another candidate for the position. This person interviewed better, had a better skill set and better interpersonal skills." *See* Aff. Metzeger, ¶ 7. (Dkt. 26-3 at 3.) Next, Metzger explains he felt Abbott was less than honest on his application for the clerk position, because on Abbott's application, next to the line marked "physical restrictions," Abbott wrote: "none (wheelchair)."[15] Finally, Metzger explained his concern that Abbott would not get along well with the other offender employees at the upholstery shop. In Metzger's affidavit he states:

> One goal when interviewing candidates for the C.I. training program is to maintain a worker friendly environment…To further this end, I usually ask other inmate workers and staff members about a potential new member of the crew. I made such inquiries about Mr. Abbott and the other candidates…. One or two of them were critical of [Abbott] as a manipulator.

---

[15] This response is ambiguous and it is not clear in the record before the Court what weight Metzger placed on this factor in finding Abbott less qualified than the successful candidate.

**MEMORANDUM DECISION AND ORDER - 12**

*See* Aff. Metzeger, ¶ 8. (Dkt. 26-3 at 3.)  This feedback, coupled with Metzger's evaluation of Abbott's skills and application, led Metzger to select an applicant he considered more qualified than Abbott. *Id.*

Abbott does not dispute Defendant's evidence. Rather, Abbott's allegation of Defendants' discrimination rests upon allegations made in his Complaint—specifically including the statement made by the offender lead man in the upholstery shop that C.I. does not hire offenders in wheelchairs. Defendants do not dispute the lead man's statement. *See* Motion for Summary Judgment (Dkt. 26-1 at 5).

The Court finds there is a genuine issue of material fact as to whether Abbott was denied the clerk position in the C.I. program by reason of his disability. Though Defendants allege a non-discriminatory reason as to why Abbott was not selected for the clerk position—that a more qualified candidate was selected—Defendants nonetheless fail to identify the more qualified offender, fail to state his qualifications or state why he was more qualified for the clerk position compared to Abbott, and fail to indicate whether the more qualified offender was disabled.

Additionally Defendants do not dispute the lead man made the comment "we can't hire anyone in a wheelchair." Though the lead man is an inmate, it is unclear whether he had any input in the offender selection process for positions in C.I.

The Court concludes the Defendants have failed, based on the record before the Court, to prove the absence of a genuine issue of material fact on elements three and four of Abbott's claim. This does not stop the Court's inquiry, however, as the Court must determine whether the alleged discrimination, if proven, was intentional.

**MEMORANDUM DECISION AND ORDER - 13**

Construing the facts most favorable for Abbott, Abbott asserts he was not hired for the clerk position because the C.I. facility's main entrance and restrooms were not handicapped accessible.[16]  However, the record is clear that, had Abbott been accepted for the clerk position in the C.I. program, ISCI would have made accommodations for Abbott's disability so he could enter the C.I. building and have access to a handicapped accessible restroom.

With regard to entry into the C.I. building, it is undisputed Defendants were willing to make accommodations for Abbott's disability so he could enter the C.I. building.  Rosenthal explained in her response to Abbott's grievance: "We can usually make a reasonable accommodation if necessary." Complaint, Ex. M. (Dkt. 3-14 at 4.) In his appeal, Abbott did not question the feasibility of accommodations; instead, he asserted that entry into the C.I. facility was only possible by stairs, and insisted that C.I. should be disability friendly. In response to Abbott's appeal, Blades stated if Abbott was accepted into the CI program: "we will make accommodations for your wheelchair issue into CI entry." *Id.* Blades response also went beyond Abbott's original grievance, which mentioned only the stairs, and explained: "We will also look at disability clean room accessibility, ADA compliance ramps, and restrooms." *Id.*  Defendants' clear willingness to accommodate Abbott's disability is contrary to a finding that Defendants were deliberately indifferent when making their decision to deny Abbott the clerk position in the C.I. program.

---

[16] Abbott's grievance does not specifically mention the lack of handicapped accessible restrooms in the C.I. building—he includes it for the first time in his Complaint.

**MEMORANDUM DECISION AND ORDER - 14**

In his response, Abbott challenges the reasonableness of Defendants suggested accommodations for Abbott's entry into the C.I. building. Specifically, he argues the alternative entry is against security regulations because it is not equipped with a metal detector. However, Warden Blades clearly stated in his response to Abbott's appeal: "We can overcome any security concern."

In addition, Abbott challenges the reasonableness of the restroom modifications raised for the first time by Blades in his grievance response, although Abbott failed to specifically include them in his grievance. In their motion for summary judgment, Defendants assert they would have converted C.I.'s restrooms so that they were handicapped accessible, and while renovations were being made, Abbott could have used the handicapped restroom in a nearby dining hall. In response, Abbott challenges Rosenthal's April 21, 2013 reply to Abbott's offender form, filed separate from the grievance, which states: "We can make a reasonable accommodation for you to enter; however not your wheelchair pusher."

The Court finds Abbott's after the fact challenge to the restroom accessibility issue is in stark contrast to Warden Blades's April 25, 2013 denial of Abbott's appeal, where Blades states: "[w]e will make accommodations for your wheelchair issue into CI entry," and will address accessibility issues with the ramps and restrooms.  There is no support for Abbott's argument that a wheelchair pusher would not have been available as part of the accommodation for restroom accessibility, interim or otherwise.[17]

---

[17] In other words, it is unreasonable to infer that Rosenthal banned the availability of a wheelchair pusher for all of Abbott's potential accessibility needs if he was selected for a position in the C.I. program.

**MEMORANDUM DECISION AND ORDER - 15**

Even construing these above facts and arguments in favor of Abbott, they do not create a genuine issue upon which a reasonable jury could conclude that Defendants acted with deliberate indifference. Abbott's failure to raise a genuine issue of material fact as to whether Defendant's alleged discrimination was intentional is, therefore, fatal to his claim under Title II of the ADA and Section 504 of the Rehabilitation Act.

### B. Abbott's Claims for Declaratory and Injunctive Relief

Abbott requests the Court issue a declaratory judgment establishing that Defendants violated Abbott's rights pursuant to Title II of the ADA and the Rehabilitation Act. In addition, he requests the Court enter an injunction prohibiting Defendants from the continued violation of his rights. Defendants argue Abbott's claims for declaratory and injunctive relief are moot because Abbott is no longer incarcerated at ISCI. Abbott fails to address this argument or offer any alterative argument in response. The Court agrees with Defendants.

In *McQuillon v. Schwarzenegger,* 369 F.3d 1091 (9th Cir.2004), the Court explained the mootness doctrine relative to requests for injunctive and declaratory relief:

> A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome." ' *See Porter v. Jones,* 319 F.3d 483, 489 (9th Cir.2003) (quoting *Clark v. City of Lakewood,* 259 F.3d 996, 1011 (9th Cir.2001)). McQuillon's release extinguishes his legal interest in an injunction because it would have no effect on him. *See Bernhardt [v. County of Los Angeles],* 279 F.3d 862

*Id.* at 1095.

Because Abbott is no longer an inmate at ISCI, he is not entitled to injunctive or declaratory relief. Ordering Defendants to provide Abbott with a position in the C.I.

**MEMORANDUM DECISION AND ORDER - 16**

training program and making accommodations for his entry into the building would not afford Abbott any relief because he is no longer imprisoned.  Moreover, Abbott's claims do not challenge an ongoing prison policy nor are they part of a class action claim, which might otherwise trigger an exception to the mootness doctrine and allow Abbott's claim to proceed.

Dismissal of the injunctive and declaratory relief requests also is in harmony with the Prison Litigation Reform Act (PLRA).Title 18 U.S.C. § 3626 limits the type of prospective relief available in prison conditions lawsuits brought under 42 U.S.C. § 1983. Under that section, the term "prospective relief" is defined as "all relief other than compensatory monetary damages."18 U.S.C. § 3626(g)(7). Particularly, 18 U.S.C. § 3626(a)(1)(A) limits such relief as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

In this instance, no prospective relief of the type requested by Abbott is necessary to protect his constitutional rights. Accordingly, Abbot's claims for injunctive and declaratory relief are moot and subject to dismissal.

## CONCLUSION

The Court will grant summary judgment in favor of Defendants as to Abbott's claim for monetary damages brought pursuant to Title II of the ADA and Section 504 of

**MEMORANDUM DECISION AND ORDER - 17**

the Rehabilitation Act. In addition, the Court will dismiss Abbott's claims for injunctive

and declaratory relief because they are moot, as Abbott is no longer incarcerated.

**ORDER**

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 26) is **GRANTED**.

Dated: **September 30, 2015**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**